JOHN W. YOUNG *et al.*

*v.*

J. B. CAREY *et al.*

*Opinion filed December 19, 1899—Rehearing denied April 17, 1900.*

1. MUNICIPAL CORPORATIONS—*section 1 of act relating to disconnecting territory, construed.* Section 1 of the act of 1879, relating to disconnecting territory from cities and villages, (Laws of 1879, p. 77,) which provides that the council or board of trustees "may," by ordinance, disconnect the territory described in the petition does not vest such council or board with discretion to refuse to pass an ordinance, if the petition is legally sufficient. (CARTER, J., and CARTWRIGHT, C. J., dissenting.)

| 184 | 613 |
| s80a | 601 |

| 184 | 613 |
| p93a | 646 |

| 184 | 613 |
| f94a | 1 52 |
| f94a | 2 53 |
| f95a | 1566 |

| 184 | 613 |
| 192 | 2 69 |
| e192 | 2 70 |
| 96a | 2473 |
| 96a | 2474 |
| f96a | 2662 |
| 97a | 66 |
| f97a | 2 73 |
| d97a | 1 86 |
| 97a | 1 87 |
| 98a | 1283 |
| 98a | 1317 |

| 184 | 613 |
| 194 | 2627 |
| 100a | 2668 |
| 101a | 1147 |

2. SAME—*mandamus lies to compel action under petition to disconnect territory.* Upon the filing of a petition to disconnect territory from a city or village, under the act of 1879, the only questions for the council or board of trustees to determine are whether the territory is located and the petition signed as required by the statute, and *mandamus* will lie to compel an investigation of such facts, and the passage of an ordinance if they are found to exist. (CARTER, J., and CARTWRIGHT, C. J., dissenting.)

*Young* v. *Carey,* 80 Ill. App. 601, reversed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Montgomery county; the Hon. S. L. DWIGHT, Judge, presiding.

WILLIAM A. HOWETT, THOMAS M. JETT, and JOSEPH M. BAKER, for appellants:

The word "may," as it occurs in the statute, is often construed to be mandatory instead of directory. It has always been construed "must" or "shall" whenever it can be seen that the legislative intention was to impose a duty and not simply a privilege of discretionary power. 14 Am. & Eng. Ency. of Law, (1st ed.) 979; *Thompson* v. *Lessee of Carroll,* 22 How. 434; *Mason* v. *Fearson,* 9 id. 248; *Fowler* v. *Pirkins,* 77 Ill. 273; *James* v. *Dexter,* 112 id. 491; *Steines* v. *Franklin County,* 48 Mo. 167; *State* v. *Holt County,* 39 id. 521; *State* v. *Saline County,* 48 id. 100.

Where the petition clearly shows that the petitioner has a personal interest in the thing he seeks to compel the respondents to do; that he has been injured in his personal interests by the refusal of the defendants to do a duty imposed upon them by law which it is in their power to do or perform, and he has a clear legal right to have the act done, *mandamus* will lie. *People* v. *Masonic Ben. Ass.* 98 Ill. 637; *North* v. *Trustees,* 137 id. 296; High on Ex. Legal Rem. sec. 431.

The entire question presented by this record is upon the construction of section 206 of chapter 24 of Hurd's Statutes, concerning disconnecting territory. Appellees

contend this statute leaves it entirely discretionary with the town board of this little village as to whether or not they shall disconnect territory. We contend that such discretionary power was never intended by the legislature to be vested in a town or village board under the section above referred to, and that while an apparently discretionary power is vested, it will, under all principles of common law and of the decisions of this State, be regulated by *mandamus,* where the rights of the public or of third parties are about to be prejudiced. *Whittaker* v. *Venice,* 150 Ill. 195.

LANE & COOPER, for appellees:

Where the performance of a duty by a public officer is discretionary, and depends upon the exercise of his judgment as to its necessity or propriety, the court will not interpose to determine how or when he shall exercise the power, but will leave him in the free exercise of his discretion to act or not, as he shall deem proper. *County of St. Clair* v. *People,* 85 Ill. 398.

The only right or authority upon which the appellants predicate their right to have the territory disconnected is by virtue of section 1 of the act of 1879, for disconnecting territory. There is nothing in the section of the statute relied upon that authorizes or empowers any court, by any judgment or decree, to fix or change the boundaries of cities or villages, nor is there anything therein contained that renders it obligatory upon cities or villages to pass an ordinance and disconnect territory from their corporate limits. Whether a city or village will pass an ordinance and disconnect territory from its corporate limits involves the exercise of a discretion and judgment as to the necessity therefor, and courts will not interpose to determine how or when they shall exercise such power, but will leave them free to act or not, as they shall deem proper. *Covington* v. *East St. Louis,* 78 Ill. 548; *Galesburg* v. *Hawkinson,* 75 id. 152.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

This is an appeal from a judgment of affirmance by the Appellate Court of a judgment of the circuit court of Montgomery county denying the petition of appellants for a writ of *mandamus* to compel appellees, as the president and trustees of the village of Donnellson, to disconnect certain territory from the village. The petition shows that 1198 acres of farm land belonging to the appellant Young, none of which was laid off into lots or blocks, was included within the territory of the village at the time of its organization, in 1897, and by this petition to the village board the appellants sought to disconnect 880 acres of that farm land from the village.

The petition was based on paragraph 206 of chapter 24 of the statutes, (Hurd's Stat. 1897, p. 289,) which is as follows: "That whenever the owners representing a majority of the area of land of any territory within any city or village, and being upon the border and within the boundary thereof and not laid out into city or village lots or blocks, shall petition the city council of such city or the trustees of such village praying the disconnection of such territory therefrom, such petition shall be filed with the city clerk of such city or the president of the trustees of such village, accompanied with a certificate of the county clerk showing that all city taxes or assessments due up to the time of presenting such petition are fully paid, at least ten days before the meeting of such city council or trustees at which it is proposed to present such petition, and the city clerk of such city or president of the trustees of such village shall present such petition to the city council or trustees, as the case may be, and upon such presentation the city council of such city or trustees of such village may, by ordinance to be passed by a majority of the members elected to such city council or board of village trustees, disconnect the territory described in such petition from such city or village:

*Provided, however,* that the territory so disconnected shall not thereby be exempted from taxation for the purpose of paying any indebtedness contracted by the corporate authorities of such city or village while such territory was within the limits thereof and remaining unpaid, but the same shall be assessed and taxed for the purpose of paying such indebtedness the same as if such territory had not been disconnected, until such indebtedness is fully paid." The statute also provides that one certified copy of the ordinance shall be filed and recorded in the recorder's office and another with the clerk of the county court, and the emergency clause is as follows: "Whereas, there is no valid law in force in this State enabling cities and villages to decrease their corporate limits, and special legislation therefor by the General Assembly is forbidden by the constitution of this State, therefore an emergency exists why this act should take effect immediately."

The answer of the appellees alleged that, as president and trustees of the village, they had duly acted upon the petition praying that the territory in question be disconnected from the village and had denied the same, and "that their right to grant or refuse the prayer of said petition to disconnect said territory involved the exercise of a sound discretion and was and is in no sense mandatory, and having in good faith and in accordance to their best judgment refused to grant the prayer of said petition, their action in so doing is not subject to judicial control." The circuit court overruled appellants' demurrer to the answer, and upon their refusal to answer further, judgment was entered against them accordingly, and for costs.

The only question which it is necessary to consider is whether the appellees, as president and trustees of the village, had, under the statute, any discretionary power, in passing upon the appellants' petition, to refuse it, or whether they were bound to grant it and pass the ordi-

nance disconnecting said territory from the village after finding that the petitioners had complied with the statute and had brought themselves within its terms.

The provisions of the statute with reference to disconnecting territory from a city or village are similar to the statute which provides for the annexation of territory to a city or village. Section 1 of the act of 1872 (Rev. Stat. p. 244) is as follows: "That on petition, in writing, signed by not less than three-fourths of the legal voters, and by the owners of not less than three-fourths (in value) of the property in any territory contiguous to any city or incorporated village or town, and not embraced within its limits, the city council or board of trustees of said city, village or town (as the case may be) may, by ordinance, annex such territory to such city, village or town, upon filing a copy of such ordinance, with an accurate map of the territory annexed (duly certified by the mayor of the city or president of the board of trustees of the village or town), in the office of the recorder of deeds in the county where the annexed territory is situated, and having the same recorded therein: *Provided*, that no portion, less than the whole of an incorporated city, town or village, shall be annexed to another incorporated city, town or village, except in the mode provided in this act for the annexation of the whole of an incorporated city, town or village, to another city, town or village."

The act of 1872 received a construction in *Whittaker* v. *Village of Venice*, 150 Ill. 195, where it was said (p. 202): "In this statute the legislature has named the conditions upon which territory may be annexed to a village. These conditions are, that a petition in writing for the annexation must be signed by three-fourths of the legal voters; that it must be signed by three-fourths (in value) of the owners, etc.; that the territory to be annexed must be contiguous to the village and not embraced within its limits. When these facts exist the board of trustees may accomplish the annexation by passing an ordinance

therefor and recording the same, together with a map of the territory, in the recorder's office; but the board is not authorized to determine, by the exercise of its own judgment or discretion, whether it is wise or unwise or whether it is good or bad policy to make the annexation. The legislature could have clothed the board with such discretionary power, but it has not seen fit to do so. On the contrary, having complete control over the subject, the legislature has determined in advance that the existence of the facts stated settles the question of the advisability of the annexation. The only function of the board is to see to it that the territory is located as the statute prescribes and that the petition is signed as the statute directs. It is quite manifest that the action of the board of trustees of a village under section 1 is not such judicial action as will authorize a review of the proceeding by *certiorari*. No provision is made for a hearing by the voters and owners who do not sign the petition, and hence the board is not invested by the legislature with the power to pass upon their property rights or to make any decision in relation thereto. (*Comrs. of Drainage District* v. *Griffin*, 134 Ill. 330.) It is authorized to find the facts that the territory is contiguous to the village, and that the petition is signed by the proper number of voters and owners."

In like manner, whenever the owners of a majority of the area of any territory within and upon the border of any city or village, not laid out into city or village lots or blocks, shall petition the city council praying a disconnection of such territory, and all city taxes or assessments due to that time have been paid, the city council may, by ordinance, disconnect the territory. The word "may" in a similar connection in other statutes has been frequently held and construed to mean "must" or "shall," and the term was so construed in section 1 of the act of 1872, with reference to the annexation of territory, in *Whittaker* v. *Village of Venice*, above cited. It is not sus-

ceptible of any other construction in the connection in which it is used in the statute of 1879, providing for the disconnection of territory. When facts exist of the character stated in section 1 of the act of 1879, and the same are set forth in a petition to the board, the board is not authorized to determine, by the exercise of its own judgment or discretion, whether it is good or bad policy to disconnect the territory. The legislature has not seen proper to clothe the board of trustees with such discretionary powers. The legislature has determined that the existence of the facts stated settles the question as to the advisability of the connection. The only function of the board is to see to it that the territory is located and the petition is signed as the statute requires. These are the only questions of fact that the board of trustees is vested with power to determine, and its duty being to determine these facts, when it is found that they exist as stated in the petition, the legislature, by its declaration, has effected the disconnection of the territory, and hence *mandamus* may be had to compel the board to do its duty in determining them.

Where a petition sets forth the facts required by section 1 of the act of 1879, then the legislature has imposed a mandatory duty upon the city or village board to determine the question of fact whether the facts stated in the petition are in accordance with the statute and are true, and when that determination has been made upon the petition, then the legislative injunction on the village board is to adopt an ordinance disconnecting the territory, and there is no discretion in the village board with reference thereto. Its duty to find a question of fact, and its duty to comply with the act of the legislature by passing an ordinance when the facts have been determined, may be compelled by *mandamus*. The adoption of the ordinance is purely ministerial under this act, and not a question of discretion with the village board. Here, the petition presented a case which would warrant the

awarding of the writ. The answer as presented showed no defense or reason why the writ should not be awarded. The demurrer thereto should have been sustained.

It was error in the circuit court of Montgomery county to overrule the demurrer to the answer and to refuse to award the writ. It was error in the Appellate Court for the Third District to affirm the judgment of the circuit court. Each of those judgments is reversed and the cause is remanded to the circuit court of Montgomery county, with directions to sustain the demurrer to the answer and to award the writ.          *Reversed and remanded.*

Mr. JUSTICE CARTER, dissenting:

I do not agree to the conclusion reached by the majority of the court in this case. The power to change the boundaries of cities and villages is legislative and not judicial, (*City of Galesburg* v. *Hawkinson*, 75 Ill. 152,) and if the legislature has vested in municipalities any of its power to change or refuse to change such boundaries for reasons of policy or convenience, the courts have no power to coerce their judgment in the exercise of such power. On the contrary, if the legislature has merely prescribed the conditions upon which the owners may have their lands disconnected from the territory of the village or city, and has conferred on the municipal authorities the mere power to decide whether or not such conditions have been complied with, then it is clear that when such conditions have been complied with they must, under the statute, pass the ordinance necessary to disconnect such territory, and if they refuse, the courts have power to compel them to obey the law. It is not necessary to consider the contention of appellants that where the record shows a clear abuse of such discretionary power to the injury of the petitioning property owner, *mandamus* will lie to correct such abuse, for the reason that no such abuse is shown by the record before us. Appellants' demurrer admits all the facts well pleaded

in the answer, which, with the petition, presents only the question of discretionary legislative power in the president and trustees of the village to pass or to refuse to pass the ordinance in question.

The legislature had the power to change the boundaries of this village, but could not do so by special or local law. It would therefore be reasonable to suppose that it would delegate to such municipalities the power to change their own boundaries upon certain prescribed conditions, rather than to confer on certain property owners such power, in effect, by complying with such conditions on their part. True, unless conferred by the statute the village has no power to disconnect territory, and we must look to the statute as the charter of its entire authority. The language is: "The city council of such city or trustees of such village may, by ordinance *to be passed by a majority of the members elected to such city council or board of village trustees,* disconnect the territory described in such petition from such city or village." The words I have italicized are not contained in the statute for the annexation of territory. Counsel for appellants contend that this language is mandatory; that "may" as used means "must," and that having complied with the conditions prescribed by the statute, appellants had the lawful right to have their lands disconnected from the village territory, and that the trustees had no discretion, but were bound to pass the ordinance and circumscribe the boundaries of the village accordingly. I cannot agree to this construction of the statute. To contract its boundaries would affect the interests and perhaps the welfare of the village and its inhabitants, and it can hardly be supposed the legislature would deny to it, or to them, at least equal power with the petitioners to circumscribe the village boundaries. Legislative discretion is implied in the language of the statute. Its meaning is, that the city council or board of trustees shall act upon the petition, and if a majority of all the mem-

bers elected shall vote for the ordinance disconnecting such territory, it shall be disconnected as provided in the statute.    If no discretion is vested in the trustees, why require that the ordinance be passed by a majority of all the members elected? It is clearly implied that the legislature intended to protect the interests of the village and its inhabitants by requiring the affirmative vote of a majority of all of the trustees which the people had elected to represent them, before contracting the limits of its territorial jurisdiction.

If the construction contended for should be adopted, then in cities and villages where highways or streets over territory sought to be disconnected have been opened and improved and sidewalks constructed thereon, sewer, water and gas pipes laid, the municipal authorities would have no discretion, but would be compelled to surrender all jurisdiction over such part of its territory upon the petition of a majority of those owning the land, and showing the payment of all taxes and assessments, and that such land had not been laid out into city or village lots or blocks; and this process of disintegration could be repeated at the pleasure of every owner of such lands not laid off into lots and blocks within the city or village. Such a view of the law seems to me unsound, although, as insisted upon by counsel, it may be a hardship upon appellants to have many hundred acres of mere farming lands embraced within the corporate limits of this village and taxed to support its government.    The pleadings show, however, that this village, with a territory not exceeding two square miles, including the lands of appellants, and containing the required number of inhabitants, was, in pursuance of a vote of the legal voters therein, duly incorporated in 1897 under the statute, and that at the November term of the circuit court following, appellants filed their petition for *mandamus* in this case.    It may well have been that the inhabitants would not have voted to incorporate with less territory than was included.

Appellants had the right to defeat at the polls the proposition to organize the village embracing their lands, if they could do so, but if they were unsuccessful in their efforts it ought not to be held, unless clearly authorized by the statute, that they now have the power to sever their lands from the territory of the village of their own free will and against the consent of the trustees of the village. This view of the meaning of the first clause of the statute seems to have been that of the legislature, as shown by the language of the emergency clause, wherein it is stated that there was no valid law in force *enabling cities and villages to decrease their corporate limits.*

Both parties cite *Whittaker* v. *Village of Venice,* 150 Ill. 195, referred to in the opinion of the court, as sustaining their respective sides of the controversy. While there are some expressions in the opinion in that case concerning section 1 of the act of 1872, (1 Starr & Cur. 515,) for the annexation of territory when petitioned for by three-fourths of the legal voters and of the owners of the land to be annexed, which, if applied to the statute here involved, would lend support to the view that the trustees had no discretion in the matter, still the question in that case was whether or not *certiorari* would lie, and the decision is not in conflict with the views I have expressed. The conditions for the annexation and those for the disconnection of territory are materially different, and there is a difference in other respects in the language of the two statutes. It cannot, therefore, be said that, as a matter of course, the same construction must be given to the two statutes.

I am satisfied that the statute here involved was properly construed by the circuit and Appellate Courts, and that the judgment denying the writ was correct and that it ought to be affirmed.

Mr. CHIEF JUSTICE CARTWRIGHT: I concur in the foregoing dissenting opinion.