WYLIE *v.* CITY COMMISSION OF THE CITY OF
GRAND RAPIDS.

1. CONSTITUTIONAL LAW—JUDICIAL DEPARTMENT IS INDEPENDENT.
    The judicial department of the government within its appropriate
        sphere is entirely independent of legislative interference (Const.
        1908, art. 4).

2. SAME—LEGISLATURE—JUDGMENT OF A COURT.
    The legislature may not reverse a judicial decision nor repeal
        the final judgment entered (Const. 1908, art. 4).

3. CERTIORARI—SCOPE OF REVIEW.
    Upon certiorari the Supreme Court may not decide disputed ques-
        tions of fact nor weigh the evidence.

4. SAME—SPECIAL ASSESSMENTS—DETERMINATION OF PARTIES EN-
    TITLED TO REFUNDS.
    Whether property owners who had been subjected to special
        assessments for street improvement purposes came within the
        terms of a statute permitting refunds of special assessments
        within the limits of cities and villages was not a question of
        fact but a question of law determinable upon certiorari (1 Comp.
        Laws 1929, § 3594, as last amended by Act No. 8, Pub. Acts
        1934 [1st Ex. Sess.], § 4651, as last amended by Act No. 7, Pub.
        Acts 1934 [1st Ex. Sess.]).

5. SAME—SPECIAL ASSESSMENTS—CLASSIFICATION OF HIGHWAYS—
    QUESTIONS OF LAW.
    Whether streets, originally improved as a part of a real estate
        development scheme in a city and which later became State
        trunk line highways under the provisions of a general statute
        providing for construction of trunk line highways, were included
        in term "State trunk line highways" as used in statutes
        relative to distribution of gasoline and weight tax moneys
        was a question of law determinable upon certiorari (1 Comp.
        Laws 1929, § 3594, subd. [d] [5] [d], as last amended by
        Act No. 8, Pub. Acts 1934 [1st Ex. Sess.]; §§ 4415, 4418, as
        amended by Act No. 131, Pub. Acts 1931; § 4651, subd. [5]
        [d], as last amended by Act No. 7, Pub. Acts 1934 [1st Ex.
        Sess.]).

6. TAXATION—REFUND OF SPECIAL ASSESSMENTS—TRUNK LINE
    HIGHWAYS—MUNICIPAL CORPORATIONS—STATUTES.
    Under statutes providing for imposition of entire cost of con-
        structing, improving and maintaining trunk line highways
        upon the State and for division of certain portions of gasoline
        and motor vehicle weight taxes, so-called, between cities and

villages and providing that "such sums so paid to such incorporated cities and villages shall be used by them, respectively, for the following purposes and in the following order of priority," petitioners who prosecuted their case to final judgment for refund of special assessments levied for trunk line highway purposes within their city before amendment of statutes containing mandatory provisions as to distribution of such tax moneys so as to make it discretionary with the municipal legislative bodies as to whether such refunds would be made *held,* entitled to such refunds where subsequent amendatory act does not make it retrospective as to proceedings for refunds which have been commenced, carried through to final judgment, and completed (1 Comp. Laws 1929, § 3594, subd. [d] [5] [d], as amended by Act No. 8, Pub. Acts 1934 [1st Ex. Sess.], and Act No. 13, Pub. Acts 1939; §§ 4415, 4418, as amended by Act No. 131, Pub. Acts 1931; § 4425; § 4651, subd. [5] [d], as amended by Act No. 7, Pub. Acts 1934 [1st Ex. Sess.], and Act No. 12, Pub. Acts 1939).

7. STATUTES—RETROSPECTIVE CONSTRUCTION.

Statutes are construed retrospectively to the extent that the legislature has clearly and unambiguously stated that the statute is to be retrospective.

8. SAME—CONSTRUCTION—PRESUMPTIONS—USURPATION OF JUDICIAL FUNCTION.

In the absence of unambiguous language to the contrary, the Supreme Court cannot presume that the legislature acted without a just appreciation of the constitutional limitations within which it might function and that it deliberately chose to reverse a final judgment of the court and to usurp the functions of the judiciary (Const. 1908, art. 4).

9. CONSTITUTIONAL LAW—VESTED RIGHTS—RETROSPECTIVE STATUTES.

At common law and up until the Fourteenth Amendment retrospective legislation could not defeat rights which had become vested and since the passage of that amendment such a statute is unconstitutional as in violation of due process of law (U. S. Const. Am. 14).

10. SAME—DEFINITION OF VESTED RIGHTS.

The term "vested rights" is not used in a narrow or technical sense when applied as a shield of protection, nor as importing a power of legal control merely, but rather as implying a vested interest which it is right and equitable that the government should recognize and protect, and of which the individual could not be deprived without injustice.

11. MUNICIPAL CORPORATIONS—HOME RULE CITIES—COST OF STREET IMPROVEMENTS—ABUTTING OWNERS—CITY AT LARGE.

> A home rule city, so-called, has the power to charge the entire cost of street improvements to the abutting property owners or spread it over the city at large (1 Comp. Laws 1929, § 2234).

12. SAME—VESTED RIGHTS—REFUNDS OF SPECIAL ASSESSMENTS—FINAL JUDGMENT.

> Statutes making refunds of special assessments, levied for improvement of streets which later became State trunk line highways within home rule cities, contingent upon a determination by the legislative body of the city or of a court upon appeal of persons entitled to refunds over and beyond those to which they were entitled under their city charter, did not create in property owners, other than those who proceeded to final judgment to recover such refund in court, a vested right to refunds; hence, subsequent statute taking away the right to such refund was not unconstitutional (1 Comp. Laws 1929, · § 3594, subd. [d] [5] [d], as amended by Act No. 8, Pub. Acts 1934 [1st Ex. Sess.], and Act No. 13, Pub. Acts 1939; § 4651, subd. [5] [d], as amended by Act No. 7, Pub. Acts 1934 [1st Ex. Sess.], and Act No. 12, Pub. Acts 1939).

13. STATUTES—REPEAL—VESTED RIGHTS—COMMON LAW.

> Since there can, in the nature of things, be no vested right in an existing law which precludes its change or repeal, the repeal of a statute without any reservation takes away all the remedies existing under the repealed act and defeats all actions pending under it at the time of its repeal, especially where the repealed statute had created a cause of action providing a remedy not known to the common law.

14. CONSTITUTIONAL LAW—VESTED RIGHTS—REPEAL OF STATUTES—TAXATION.

> Vested rights are not impaired by the repeal or modification of statutes permitting a refund of taxes erroneously or illegally assessed.

15. SAME—VESTED RIGHTS—STATUTES.

> There is no vested right in a public law which is not in the nature of a private grant.

16. TAXATION—REFUND OF SPECIAL ASSESSMENT—TRUNK LINE HIGHWAYS—ACTION OF CITY COMMISSION.

> Where, under statute authorizing legislative body of a city to refund special assessments levied for improvement of streets which became State trunk line highways as funds for such

purpose were derived from gasoline and weight tax revenues and, pursuant to such statutes, the city commission cancelled the last 5 of 10 instalments under special assessment levy and provided for refund to those who had already paid them, court was correct in denying refund of first 5 and, since the action taken in cancelling last 5 instalments and providing for refund thereof to those who had already paid was taken before subsequent amendatory legislation was passed withdrawing the right to such refund, property owners who had applied therefor were entitled to same (1 Comp. Laws 1929, § 3594, subd. [d] [5] [d], as amended by Act No. 8, Pub. Acts 1934 [1st Ex. Sess.], and Act No. 13, Pub. Acts 1939; § 4651, subd. [5] [d], as amended by Act·No. 7, Pub. Acts 1934 [1st Ex. Sess.], and Act No. 12, Pub. Acts 1939).

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted April 2, 1940. (Docket Nos. 14–16, Calendar Nos. 40,918–40,920.) Decided June 3, 1940.

, Bill by Henry Smith against City Commission of the City of Grand Rapids, the city and its commissioners to recover sums paid on special assessments, for an accounting and injunctive relief. From decree rendered, plaintiffs appeal and defendants cross-appeal.

Mandamus by Henry Smith and others to compel the City Commission of the City of Grands Rapids to abide by a judgment. Writ denied. Plaintiffs appeal.

Claim by Henry Smith against City Commission of City of Grand Rapids for refund of special assessments. Claim denied. Claimant appealed to Superior Court of Grand Rapids. Case dismissed. Plaintiff appeals.

Curtis M. Wylie and Walter F. Perschbacher, executors of the last will and testament of Henry Smith, deceased, substituted as party plaintiff upon suggestion of death of Henry Smith. Orders entered con-

solidating cases for trial and appeal.   Modified and affirmed.

*Fred P. Geib, Russell Van Kovering,* and *Linsey, Shivel, Phelps & Vander Wal (Clem H. Block,* of counsel), for plaintiffs.

*Ganson Taggart* and *Earl F. Phelps,* for defendants.

POTTER, J.   This is a consolidation of three actions begun by plaintiffs under 1 Comp. Laws 1929, § 3594, as amended by Act No. 132, Pub. Acts 1931, Act No. 41, Pub. Acts 1932 (1st Ex. Sess.), Act. No. 81, Pub. Acts 1933, and Act No. 8, Pub. Acts 1934 (1st Ex. Sess.) (Comp. Laws Supp. 1935, § 3594, Stat. Ann. § 7.309) ; and 1 Comp. Laws 1929, § 4651, as amended by Act No. 34, Pub. Acts 1932 (1st Ex. Sess.), Act No. 165, Pub. Acts 1933, and Act No. 7, Pub. Acts 1934 (1st Ex. Sess.) (Comp. Laws Supp. 1935, § 4651, Stat. Ann. § 9.1449), to recover special assessments paid to defendant for widening streets which later became part of State trunk line highways M-131 and M-50.

Plaintiffs are the owners of three lots on South Division avenue between Monroe avenue on the north and Wealthy street on the south; and own 160 acres in West Grand Rapids abutting upon John Ball park on one side and the city limits on the other.   These pieces of property are respectively located in what will hereafter be referred to as special assessment districts Nos. 3478 and 4146.

. In 1928, special assessments were levied on plaintiffs' property in district No. 3478 for defraying the cost of widening South Division avenue from Monroe avenue to Wealthy street.   Plaintiffs were assessed $23,904.30, payable in 10 equal instalments, 5 of which

plaintiffs have paid. At the time this assessment was made, South Division avenue was not a part of State trunk line highway M-131. Defendant was receiving gasoline tax moneys under 1 Comp. Laws 1929, § 3594, subd. c-1, which provided that cities should receive "a sum equal to $2,000 per mile of State trunk line highways, contained within the limits of a city."

In 1929, assessments were made upon plaintiffs' property in district No. 4146 for defraying the cost of improving Lake Michigan drive between Covell road and Bristol street, the center 20 feet of which was at that time formally dedicated a State trunk line highway, M-50. The State paid the entire cost of improving the center 20 feet, and plaintiffs were assessed $108,749.60 as their share of all other expense. Plaintiffs have paid the first 4 of 10 equal instalments. Under Act No. 131, Pub. Acts 1931, commonly known as the Dykstra act, amending 1 Comp. Laws 1929, §§ 4415, 4418 (Comp. Laws Supp. 1935, §§ 4415, 4418 Stat. Ann. §§ 9.881, 9.884), the entire width of Lake Michigan drive was taken over as State trunk line highway M-50.

In 1931 and 1932, other sections of Division avenue were improved in what are known as assessment districts Nos. 1145 and 1149. It was originally intended to finance the improvement under the amendment to the Covert law which extended the benefits of that act to cities. Act No. 59, Pub. Acts 1915, as last amended by Act No. 170, Pub. Acts 1927 (see 1 Comp. Laws 1929, § 4314 *et seq.*). However, Act No. 41, Pub. Acts 1932 (1st Ex. Sess.), commonly known as the Horton act, amending Act No. 150, § 19, Pub. Acts 1927 (1 Comp. Laws 1929, § 3594), and adding sections 19a-19f, made it possible to defray the entire cost out of gasoline and weight taxes.

Recognizing the injustice of assessing property owners in districts Nos. 3478 and 4146 for the full

amount of the improvement and not assessing property owners in districts Nos. 1145 and 1149 for any cost of similar improvements, the city commission sent representatives to Lansing to ask the legislature to provide relief for property owners in districts Nos. 3478 and 4146. Relief was afforded by Act No. 150, § 19a, subd. 5 (d), Pub. Acts 1927, as last amended by Act No. 107, Pub. Acts 1933 (Comp. Laws Supp. 1933, § 3594-1, subd. 5-d). This section was reenacted and made applicable alike to proceeds from the gasoline and weight taxes by 1 Comp. Laws 1929, § 3594, subd. (d) (5) (d), as last amended by Act No. 8, Pub. Acts 1934 (1st Ex. Sess.) (Comp. Laws Supp. 1935, § 3594, Stat. Ann. § 7.309), the gasoline tax law, and 1 Comp. Laws 1929, § 4651, subd. 5 (d), as amended by Act No. 7, Pub. Acts 1934 (1st Ex. Sess.) (Comp. Laws Supp. 1935, § 4651, Stat. Ann. § 9.1449), the weight tax law. Under these acts, funds were to be used for certain enumerated purposes and, if any money remained, it was to be apportioned between the county and incorporated cities and villages to be "used by them, respectively, for the following purposes and in the following order of priority:

"(d) The payment or refunding to the taxpayers, without interest, of all or any portion of the special assessment or assessments for the cost of opening, widening or improving any State trunk line highway within any incorporated city or village, which cost was levied as a special assessment or assessments prior to this amendatory act: *Provided,* That the legislative body of such city or village desiring to come under this subdivision shall so determine, by resolution, by a majority vote of the members elect. Such legislative body shall determine in such resolution the amount to be so paid and/or to be refunded to the taxpayers, the time of such payment and/or refund and the manner in which such payment and/or refund

shall be made: *Provided,* That when such payment and/or refund shall be determined by such legislative body, the same shall apply in equal pro rata benefits to all lands so assessed for such special assessment or assessments.''

The city commission interpreted this law as giving it the discretionary power to select certain assessment districts in which total or partial refunds might be made. It passed a resolution September 17, 1934, cancelling the last five instalments due upon the assessment in district No. 3478 and provided for the refund of the sixth to tenth instalments to those who had paid in advance. At present, only the sixth instalment has been repaid. Plaintiffs took no appeal from this action, but did demand refunds for instalments paid in district No. 4146. Defendant refused to make the refunds, claiming that under 1 Comp. Laws 1929, § 3594, subd. (d) (5) (d), as last amended by Act No. 8, Pub. Acts 1934 (1st Ex. Sess.), and 1 Comp. Laws 1929, § 4651, subd. 5 (d), as last amended by Act No. 7, Pub. Acts 1934 (1st Ex. Sess.), it was within its discretion what districts should be repaid. The case came before this court in *Smith* v. *City Commission of Grand Rapids,* 281 Mich. 235, where it was held the law was mandatory, that if one assessment district was given a refund, all assessment districts must be given refunds.

Following this decision, taxpayers from some 15 assessment districts filed petitions for refunds. As the statutes required refunds ''in equal *pro rata* benefits to all lands so assessed,'' the commission was prevented from paying to any one assessment district until it had determined how many districts and how many persons within each district were entitled to refunds. Weight and gasoline tax money was accordingly set aside in a special fund pending a final

determination and, August 28, 1938, the commission advertised that public hearings would be held to ascertain what persons and districts were entitled to refunds. January 5, 1939, the commission approved a report of its special investigating committee that the statutes, 1 Comp. Laws 1929, § 3594, as last amended by Act No. 8, Pub. Acts 1934 (1st Ex. Sess.), and 1 Comp. Laws 1929, § 4651, as last amended by Act No. 7, Pub. Acts 1934 (1st Ex. Sess.), provided for refunds only when the assessment was paid for improving a street which was a State trunk line highway at the time of the improvement. The commission voted that plaintiffs were not entitled to refunds in district No. 4146 as only the center 20 feet of Lake Michigan drive was a State trunk line highway when the improvement was made. The commission also determined that, as to district No. 3478, plaintiffs were not entitled to a refund of the first five instalments because no appeal had been taken from the determination of the commission in 1934,—that only the sixth to tenth instalments would be repaid. Plaintiffs appealed to the superior court.

At the same time, some 20 other appeals were taken to the superior court by those taxpayers who claimed the statute entitled them, as well as plaintiffs, to refunds. The cases were consolidated and heard together as consolidated case No. 4113, entitled *Devormer* v. *City Commission of Grand Rapids*.

Shortly before taking the appeal, in law, from the determination of the city commission, plaintiffs had begun two actions, in equity, in the superior court. One action, No. 6309, was a bill in equity in the nature of a bill in aid of execution on the theory that in *Smith* v. *City Commission of Grand Rapids, supra,* plaintiffs had obtained a final judgment. This action was consolidated with plaintiffs' action, at law, and the two actions were disposed of for the reasons given in

*Devormer* v. *City Commission of Grand Rapids.*
Plaintiffs' second action, superior court No. 3835, was
mandamus to compel the city commission to refund
those sums to which plaintiffs claimed they were en-
titled by reason of the decision in *Smith* v. *City Com-
mission of Grand Rapids, supra.* This action was also
disposed of for substantially the same reasons as
given in *Devormer* v. *City Commission of Grand
Rapids.*

After the appeals to the superior court had been
taken, but before an opinion was filed in the case of
*Devormer* v. *City Commission of Grand Rapids,* the
legislature passed Acts Nos. 12 and 13, Pub. Acts
1939, which amended, respectively, 1 Comp. Laws
1929, § 4651, subd. 5 (d), and § 3594, subd. (d) (5)
(d), as last amended by Acts Nos. 7 and 8, Pub. Acts
1934 (1st Ex. Sess.), by providing that refunds of
gasoline and weight taxes under subdivisions d (5)
(d) (Comp. Laws Supp. 1940, § 3594 [d] [5] [d])
and 5 (d) (Comp. Laws Supp. 1940, § 4651, 5 [d]),
were discretionary with the city commission. The
amendatory acts provided:

"(d) The payment or refunding, without interest,
to the taxpayers of any assessment district or dis-
tricts, of all or any portion of any special assessment
or assessments levied in such district or districts for
the cost of opening, widening or improving any State
trunk line highway within any incorporated city or
village, which cost was levied as a special assessment
or assessments prior to this amendatory act, *if such
city or village so desires; Provided,* That the legisla-
tive body of such city or village desiring to pay and/or
refund in accordance with this subdivision shall desig-
nate by resolution, by a majority vote of the members-
elect, *the specific special assessment district or dis-
tricts as to which payment and/or refund is to be
made, the portion or portions of the special assess-*

*ment or assessments levied in such district or districts to be paid and/or refunded,* the time of such payment and/or refund, and the manner in which such payment and/or refund shall be made."

August 4, 1939, the trial court held in *Devormer* v. *City Commission of Grand Rapids:*

(a) "The effect, therefore, of subsection (d) as placed in the 1939 acts is that so far as priority is concerned, it is excepted from the act unless the city commission concludes to bring it within the order ·of priority. When the legislative body handling the funds has by proper action designated and declared that refunds shall be paid, then they shall first be paid before the money is used under subdivision (e). Until they have so declared and so designated, nothing need be paid in the way of refunds, and the money may then be used under subdivision (e).   *   *   *

(b) "In this cause, the rights of petitioners depend entirely and exclusively upon the acts of 1934.   *   *   * When those acts ceased to exist, the right and duty expired with them.   *   *   *

(c) "It is our opinion that petitioners have no vested rights, that no contract relation exists, and that the acts of 1939 give the city commission entire jurisdiction and discretion in the disposition of the funds.   They have already made determination in assessment district No. 3478, as to the 6th to 10th instalments.   No determination has been made in this district as to the first five instalments, and until so made, petitioners are entitled to no refund of those instalments.   *   *   *

(d) "The taxpayers in assessment district No. 4146, referred to as M-50, are also not entitled to refunds until further action by the city commission. The decision in the *Smith Case* did not direct that refunds be made to this assessment district.   It was only directory to the manner in which the city commission should proceed under those acts then in force.

The rights of these petitioners remained, therefore, inchoate.''

From this determination, as well as the determination in the chancery actions, plaintiffs have appealed, claiming error as to all points decided by the lower court. Defendant has taken a cross-appeal from the cancellation of the seventh, eighth, ninth and tenth instalments as to district No. 3478. The appeals in each of the three actions have been combined and are heard here as one case.

The appeals of all other property owners in composite case No. 4113 are before this court in *Devormer* v. *City Commission of Grand Rapids, post,* 592.

Numerous assignments of error have been reduced to two major issues: (1) Was *Smith* v. *City Commission of Grand Rapids, supra,* a final adjudication that refunds be made in district No. 4146; and, if so, are amendatory Acts Nos. 12 and 13, Pub. Acts 1939, unconstitutional; and (2) Were plaintiffs' rights to refunds in district No. 3478 vested rights which could not be defeated by amendatory Acts Nos. 12 and 13, Pub. Acts 1939?

1. The judicial department of the government within its appropriate sphere is entirely independent of legislative interference.

''The powers of government are divided into three departments: The legislative, executive and judicial.'' Constitution of 1908, art. 4, § 1.

''No person belonging to one department shall exercise the powers properly belonging to another, except in the cases expressly provided in this Constitution.'' Constitution of 1908, art. 4, § 2.

As applied to this case, the legislature may not reverse a judicial decision or repeal the final judgment entered. *People, ex rel. Butler,* v. *Supervisors*

*of Saginaw County,* 26 Mich. 22; *Moser* v. *White,* 29 Mich. 59; *Denny* v. *Mattoon,* 2 Allen (84 Mass.), 361 (79 Am. Dec. 784); *Opinion of the Justices to the Senate,* 234 Mass. 612 (127 N. E. 635); *McManus* v. *Hornaday,* 124 Iowa, 267 (100 N. W. 33, 104 Am. St. Rep. 316, 2 Ann. Cas. 237); *People* v. *Cummings,* 88 Mich. 249 (14 L. R. A. 285); *Langever* v. *Miller,* 124 Tex. 80 (76 S. W. [2d] 1025, 96 A. L. R. 836); *McCullough* v. *Virginia,* 172, U. S. 102 (19 Sup. Ct. 134); 25 A. L. R. p. 1136; 3 A. L. R. p. 450. If *Smith* v. *City Commission of Grand Rapids, supra,* was a final adjudication that plaintiffs were entitled to refunds in district No. 4146, it is a right of which plaintiffs may not be deprived by amendatory Acts Nos. 12 and 13, Pub. Acts 1939. *Smith* v. *City Commission of Grand Rapids, supra,* was not merely directory as to the manner in which the city commission should proceed under the legislation then in force. It was a final adjudication that plaintiffs were entitled to refunds. In the opening paragraphs of the decision it was stated:

"The only question is whether plaintiffs are entitled to a refund under these provisions of the statutes."

The decision concluded:

"Plaintiffs are entitled to be reimbursed to the full amount of the special assessment made against their lands when, as, and if money comes into the hands of the city under either of the acts in question not required to be paid out by it under 1 Comp. Laws 1929, § 3594, subd. 5 (a, b, c), as amended, and the city commission has no authority to refuse so to apply the money and set aside and vary the order and priority of payment as fixed by statute."

Defendant is again using the same arguments, the same exhibits, the same contract, that it used in the

*Smith Case* to persuade this court that district No. 4146 did not come within the terms of the refund statutes. By supplemental briefs, they were all presented to the court in the *Smith Case,* they were fully considered, and the court concluded that plaintiffs were entitled to refunds. Defendant claims the only question settled in the *Smith Case* was that the statute was mandatory. Defendant claims this court could not determine whether plaintiffs came within the terms of the statute for this was a disputed question of fact which could not be decided upon certiorari.

It is true that upon certiorari the Supreme Court may not decide disputed questions of fact or weigh the evidence. *Brown* v. *Blanchard,* 39 Mich. 790; *Carroll* v. *City Commission of City of Grand Rapids,* 266 Mich. 123; *Public Welfare Commission of Detroit* v. *Civil Service Commission of Detroit,* 289 Mich. 101. But whether plaintiffs came within the terms of the 1934 legislation was a question of law. There was no dispute as to the fact that the Dykstra act (Act No. 131, Pub. Acts 1931) made the entire width of Lake Michigan drive, for which plaintiffs were assessed in 1929, part of State trunk line highway M-50. The only question was, whether the words "State trunk line highway" as found in 1 Comp. Laws 1929, § 3594, subd. (d) (5) (d), as last amended by Act No. 8, Pub. Acts 1934 (1st Ex. Sess.), and 1 Comp. Laws 1929, § 4651, subd. 5 (d), as last amended by Act. No. 7, Pub. Acts 1934 (1st Ex. Sess.), would include streets which, originally improved as a part of a real estate development scheme, later became State trunk line highways under the Dykstra act. This was a question of law.

Plaintiffs in assessment district No. 4146 are in a different position from plaintiffs in other assessment districts. They carried their case to final judgment. We think they are properly entitled to refunds. The

amendatory acts of 1939 are not unconstitutional. They do not purport to reverse this court's decision in the *Smith Case*. Statutes are construed retrospectively to the extent that the legislature has clearly and unambiguously stated that the statute is to be retrospective. *Davis* v. *Railroad Co.*, 147 Mich. 479; *Detroit Trust Co.* v. *City of Detroit*, 269 Mich. 81. The statutes, 1 Comp. Laws 1929, § 3594, subd. (d) (5) (d), as last amended by Act No. 13, Pub. Acts 1939, and 1 Comp. Laws 1929, § 4651, subd. 5 (d), as last amended by Act No. 12, Pub. Acts 1939, are clearly and unambiguously retrospective as to all proceedings which *"shall be* commenced, entertained, or continued  *  *  *  to compel payment and/or refund with respect to any special assessment district not previously so specifically designated by such legislative body."* Nothing in the acts makes the law retrospective as to proceedings which have been commenced, carried through to final judgment, and completed. In the absence of unambiguous language to the contrary, we cannot presume that the legislature acted without a just appreciation of the constitutional limitations within which it might function and that it deliberately chose to reverse a final judgment of the court and to usurp the functions of the judiciary. *Attorney General* v. *Detroit United Railway*, 210 Mich. 227.

2. Plaintiffs also claim a refund of the first five instalments of the assessment levied in district No. 3478. The rights to refunds in this district are vested, say plaintiffs, and cannot be divested by retrospective legislation without violating the Fourteenth Amendment of the Federal Constitution. At the common law, it was the rule that retrospective legislation could not defeat rights which had become vested. *Miller's Case,* 1 Wm. Bl. 451 (1764) (96 Eng. Rep. 259); *Surtees* v. *Ellison,* 9 B. & C. 750 (1829) (109 Eng. Rep.

278); *Key* v. *Goodwin*, 4 Moo. & Pay. 341 (1830). The same rule prevailed in the United States before the Fourteenth Amendment. *Yeaton* v. *United States*, 5 Cranch (9 U. S.), 281; *Norris* v. *Crocker*, 13 How. (54 U. S.) 429; *Satterlee* v. *Matthewson*, 2 Pet. (27 U. S.) 380. Following the passage of the Fourteenth Amendment, any law which deprived a litigant of a vested right has been held unconstitutional and in violation of due process of law. *Pritchard* v. *Norton*, 106 U. S. 124 (1 Sup. Ct. 102); *Campbell* v. *Holt*, 115 U. S. 620 (6 Sup. Ct. 209); *Ettor* v. *City of Tacoma*, 228 U. S. 148 (33 Sup. Ct. 428); *Forbes Pioneer Boat Line* v. *Board of Comm'rs of Everglades Drainage District*, 258 U. S. 338 (42 Sup. Ct. 325). Defendant does not dispute this proposition, but claims that plaintiffs' rights were inchoate and not vested.

A vested right has been defined in the following terms:

"Now, what is a vested right? Without reference to a dictionary definition, we would define it as a right, so fixed that it is not dependent on any future act, contingency or decision to make it more secure." *Kennedy Coal Corp.* v. *Buckhorn Coal Corp.*, 140 Va. 37 (124 S. E. 482).

"A vested right is a present or future right to do or possess certain things not dependent upon a contingency." *Sovereign Camp., W. O. W.,* v. *Cousins* (Tex. Civ. App.), 26 S. W. (2d) 453.

"Rights are 'vested' when the right of enjoyment, present or prospective, has become the property of some particular person or persons as a present interest." *Trustees of Presbytery of Jersey City* v. *Trustees of First Presbyterian Church of Weehawken*, 80 N. J. Law, 572 (78 Atl. 207), and quoted

with approval in *Crump* v. *Guyer,* 60 Okla. 222 (157 Pac. 321, 2 A. L. R. 331).

Few questions have troubled the courts more than the problem of what are vested rights. What some courts have considered vested, others have considered inchoate. 44 Yale Law Journal, p. 358 (*note*). A few courts have frankly recognized that policy considerations, rather than definitions, are controlling, and have defined a vested right as a right of which the individual could not be deprived without injustice.

"In its application as a shield of protection, the term 'vested rights' is not used in any narrow or technical sense, or as importing a power of legal control merely, but rather as implying a vested *interest which it is right and equitable that the government should recognize and protect, and of which the individual could not be deprived without injustice.*" 2 Cooley's Constitutional Limitations (8th Ed.), p. 745.

This language was quoted with approval in *Diamond State Iron Co.* v. *Husbands,* 8 Del. Ch. 205 (68 Atl. 240).

"A 'vested right,' as that term is used in relation to constitutional guaranties, implied an interest 'which it is proper for the State to recognize and protect, and of which the individual could not be deprived arbitrarily without injustice.' " *City of Los Angeles* v. *Oliver,* 102 Cal. App. 299 (283 Pac. 298).

See, also, *American States Water Service Co.* v. *Johnson,* 31 Cal. App. (2d) 606 (88 Pac. [2d] 770).

"When a party,     *   *   *     avers that a statute has invested him with a right against another in the nature of a personal charge, which a repeal of the statute before judgment cannot impair, he takes it upon himself to show that the right was vitalized by some personal equity underlying the law, or arising upon it."

*Bay City & East Saginaw R. Co.* v. *Austin,* 21 Mich.
390.

Under the definitions above quoted, plaintiffs'
rights were not vested. The statutes, 1 Comp. Laws
1929, § 3594, subd. (d) (5) (d), as last amended by
Act No. 8, Pub. Acts 1934 (1st Ex. Sess.), and 1 Comp.
Laws 1929, § 4651, subd. 5 (d), as last amended by
Act No. 7, Pub. Acts 1934 (1st Ex. Sess.), and as in-
terpreted in *Smith* v. *City Commission of Grand
Rapids, supra,* made refunds contingent upon a de-
termination by the legislative body of the city or of a
court upon appeal of the persons entitled to refunds.
At the time the amendatory acts of 1939 were passed,
the only persons determined to be entitled to refunds
were the plaintiffs in *Smith* v. *City Commission of
Grand Rapids, supra.* The defendant is a so-called
"home rule" city. It has the power to either charge
the entire cost of street improvements to the abutting
property owners or spread it over the city at large.*
It had the power to charge the entire cost of the 1928
improvement against the property owners in district
No. 3478, but could have spread the cost of similar
improvements made in 1931 over the city at large.
The effect of the 1934 legislation was to allow plain-
tiffs to receive sums over and beyond those to which
they were entitled under the city charter, and the
effect of the repealing acts of 1939 was to prevent this
consequence. In the last analysis, plaintiffs' rights
sprang from the kindness and grace of the legislature.
And it is the general rule that that which the legisla-
ture gives, it may take away.

"I take the effect of repealing a statute to be,
to obliterate it as completely from the records of the
Parliament as if it had never passed, and that it must
be considered as a law that never existed, except for

* See 1 Comp. Laws 1929, § 2234 (Stat. Ann. § 5.2077).—Reporter.

the purpose of those actions or suits which were commenced, prosecuted, and concluded, whilst it was an existing law." *Key* v. *Goodwin, supra.*

"There can, in the nature of things, be no vested right in an existing law which precludes its change or repeal." *Harsha* v. *City of Detroit,* 261 Mich. 586, 594 (90 A. L. R. 853).

"What the statute gave the statute could take away, there being no contract relation." *Devlin* v. *Morse,* 254 Mich. 113.

"It is the general rule that the repeal of a statute without any reservation takes away all the remedies existing under the repealed act and defeats all actions pending under it at the time of its repeal. The rule is peculiarly applicable to the repeal of a statute which creates a cause of action providing a remedy not known to the common law." *Continental Oil Co.* v. *Montana Concrete Co.,* 63 Mont. 223 (207 Pac. 116).

Although destroying a remedy or depriving a court of jurisdiction often deprives a litigant of a valuable right, it has been held that vested rights are not impaired when in a pending case a statute giving jurisdiction or providing a remedy not given at common law is repealed. *In re Feland's Estate,* 26 Okla. 448 (110 Pac. 736) ; *People* v. *Bank of San Luis Obispo,* 159 Cal. 65 (112 Pac. 866, 37 L. R. A. [N. S.] 934, Ann. Cas. 1912B, 1148) ; *Wilkes Barre Lace Manfg. Co.* v. *Mundy,* 18 Fed. Supp. 65; 1 Lewis' Sutherland, Statutory Construction (2d Ed.), p. 550 *et seq.,* § 285. Nor are vested rights impaired by the repeal or modification of statutes permitting a refund of taxes erroneously or illegally assessed. *Haight* v. *United States* (C. C. A.), 22 Fed. (2d) 367 ; *Board of Commissioners of St. Joseph County* v. *Ruckman,* 57 Ind. 96 ; *People, ex rel. Eitel,* v. *Lindheimer,* 371 Ill. 367 (21 N. E. [2d] 318, 124 A. L. R. 1472) ; *contra:*

*Duke Power Co.* v. *South Carolina Tax Com'n* (C. C. A.), 81 Fed. (2d) 513.

In *Tivey* v. *People, ex. rel. North,* 8 Mich. 128, mandamus was brought by the highway commissioner against the treasurer of Tuscola township to enforce an act of 1855 which appropriated highway taxes to defray the cost of a certain highway. In the absence of the statute, the taxes would have been spent upon all the roads in the several road districts. After the taxes had been collected by the township treasurer, and after legal proceedings had been commenced, the act of 1855 was amended by exempting therefrom the township of Tuscola. The court held:

"The duty of the treasurer to pay to him, this money, was created by the act of 1855, and rested upon that alone. Independent of this act, neither the right nor the duty had any existence.   *   *   *

"As the right of the commissioners, and the duty of the treasurer, were created by and entirely dependent upon the act, when that ceased to exist, the right and the duty expired with it."

Similar to the present controversy are the three cases of *Young* v. *Carey,* 184 Ill. 613 (56 N. E. 960) ; *People, ex rel. Glenn,* v. *Binns,* 192 Ill. 68 (61 N. E. 376) ; and *Vance* v. *Rankin,* 194 Ill. 625 (62 N. E. 807, 88 Am. St. Rep. 173).

In the second mentioned case, it was stated:

"But there is a material difference between rights based upon contract and rights based upon statute. There is no vested right in a public law which is not in the nature of a private grant."

Plaintiffs argue that the statutes, 1 Comp. Laws 1929, § 3594, subd. (d) (5) (d), as last amended by Act No. 8, Pub. Acts 1934 (1st Ex. Sess.), and 1 Comp. Laws 1929, § 4651, subd. 5 (d), as last amended by Act

No. 7, Pub. Acts 1934 (1st Ex. Sess.), were in the nature of a private grant to the property owners for whom the defendant commission is *cestui que trust,* and the case is governed by *Spaulding* v. *Andover,* 54 N. H. 38. In that case, the original statute had assigned certain bonds to each town in the State, which bonds were payable to the town upon the town's taking and receipting therefor. The town of Andover had not taken or receipted for its share of the bonds which had been assigned to it and no bonds or money had actually been taken from the State treasury by the town, but they were held by the State treasurer ready to be delivered to the town whenever the town would receipt therefor. An amendatory act was then passed which sought to divert part of the funds already assigned to the town to certain citizens of the town. In the instant case, the original statutes gave funds to certain undefined persons. But, before such persons had been determined, the amendatory acts were passed. In *Spaulding* v. *Andover, supra,* the donee of the funds was known and the right to the bonds had been fully determined by a completed grant of the legislature, whereas, in the instant case, the right was contingent upon a determination by the legislative body of the city or a court upon appeal of the persons entitled to the funds. Plaintiffs also contend the instant case is indistinguishable from *Ettor* v. *City of Tacoma, supra; Steamship Company* v. *Joliffe,* 2 Wall. (69 U. S.) 450; *Cusick* v. *Feldpausch,* 259 Mich. 349, where it was held that rights were vested. In all of these cases, the repealed statute was in effect at the time the cause of action arose. Upon the occurrence of the designated event *eo instante,* the rights became vested. In the present case, the statute was not in effect when the assessment was made and plaintiffs' rights were conditioned upon certain actions by the city commission. Before

the condition had been satisfied, the act was repealed. Plaintiffs' rights arose from an act of the legislature and their rights to refunds depended upon the anticipated continuance of the law. To say that the legislature could not revoke what it could give would turn a gratuity into a contract and raise rights higher than their source. The trial court correctly denied plaintiffs refunds of the first five instalments in assessment district No. 3478. As the commission had made determination that instalments 6 through 10 should be cancelled and refunded before the amendatory legislation was enacted, refunds upon those instalments should be completed.

The decision of the lower court is modified and affirmed in accordance herewith.

Bushnell, C. J., and Chandler, North, McAllister, Wiest, and Butzel, JJ., concurred. Sharpe, J. did not sit.