PEOPLE *v.* STICKLE.

1. CRIMINAL LAW—WIFE ABANDONMENT — WHO MAY MAKE COMPLAINT.

    Act No. 144, Pub. Acts 1907, authorizing the superintendents of the poor and the county agents of the State board of corrections and charities to make complaint against a husband for deserting his family, does not preclude the wife from making complaint against her husband for said offense. The general rule is that one who is competent to testify as a witness and has knowledge of the facts, may make the complaint in a criminal case.

2. SAME — HUSBAND AND WIFE — ABANDONMENT — DESERTION — WHAT CONSTITUTES—INSTRUCTIONS.

    In an action under Act No. 144, Pub. Acts 1907, against a husband for desertion of his wife, respondent was entitled to a requested instruction that "abandonment or desertion under the statute, means to separate from, wrongfully, without intention of again resuming marital relations;" since it is such wilful abandonment or desertion without just cause which is of the essence of the offense. That the husband is unable to provide for the wife or family, that she may earn a living, or that her friends and relatives will keep her from want, does not excuse wilful abandonment; nor is the resulting burden to the public an element of the statutory offense.

3. CONSTITUTIONAL LAW—STATUTES—TITLE—SUFFICIENCY.

    A statute is not void for duplicity of title and objects, under section 20, article 4, of the Constitution, where the title, after stating the object, does no more than add a notice of a repealing clause, which repeal would be effected by implication by the enactment of the law itself.

4. SAME.

    Act No. 144, Pub. Acts 1907, § 1, which provides, after stating the elements of the offense, for securing to the family of a convicted person a portion of his earnings during his confinement, is not invalid under section 20, article 4, of the Constitution; since there is an apparent and necessary connection between the offense created, its punishment, and the enforced use of his earnings after his conviction.

5. SAME.
  And the provision in said section allowing the convicted per-
  son before sentence to give a bond for the support and main-
  tenance of his family, upon the approval of which the court
  is authorized to suspend sentence, is also within the object
  expressed in the title; since such provision is intended to
  secure such maintenance by the voluntary action of the con-
  victed person.

6. CRIMINAL LAW — SUSPENSION OF SENTENCE — STATUTORY CON-
  STRUCTION.
  The provision in said act for the suspension of sentence upon
  a person convicted will not, for the purpose of defeating the.
  law, be construed as conferring any new power upon courts,
  a different construction being reasonably permitted.

Exceptions before judgment from the superior court of
Grand Rapids; Stuart, J. Submitted February 11, 1909.
(Docket No. 150.) Decided May 25, 1909.

George F. Stickle was convicted of deserting his wife.
Reversed.

*A. A. & H. A. Ellis*, for appellant.

*John E. Bird*, Attorney General, *John W. Powers*,
Prosecuting Attorney, and *Colin P. Campbell*, Assistant
Prosecuting Attorney, for the people.

OSTRANDER, J. Respondent was convicted of violat-
ing Act No. 144, Pub. Acts 1907, which act, with its title,
is set out in the margin of this opinion.[1] His wife was

---

[1] "An act to prevent the desertion and abandonment of wife or chil-
dren by persons charged by law with the maintenance thereof;
to make such abandonment and desertion a felony and to pre-
scribe the punishment therefor; to provide for the care of the de-
pendent wife and children; and to repeal act number thirty-nine
of the public acts of nineteen hundred three.
*The people of the State of Michigan enact:*
  "SECTION 1. Any person who deserts and abandons his wife or
deserts and abandons his minor children under fifteen years of age
and without providing necessary and proper shelter, food, care and
clothing for them, shall upon conviction be deemed guilty of a felony

the complaining witness.   Complaint was made January 8, 1908, and the alleged date of the desertion is December 27, 1907.   Upon being arraigned in the circuit court, he moved to quash the information upon the grounds (1) that the statute authorized the complaint to be made only by the superintendent of the poor or by a county agent of the board of corrections and charities; (2) that the statute is unconstitutional and void because expressing more than one object in its title.   The motion was denied, and respondent pleaded "Not guilty."   At the trial respondent demurred to the evidence for the people; one of the grounds of demurrer being—

"That the statute is unconstitutional and void because it attempts to embrace and does embrace two different and distinct matters, namely, making certain things a crime, and also providing for the employment, control, and management of penal institutions in this State."

Another was that the testimony for the people did not prove, or tend to prove, that the wife was, or was likely to be, a burden on the public.   The ruling was adverse to the respondent, who thereupon offered testimony tending to disprove the case made for the people.   The court declined to instruct the jury to return a verdict for respondent. To these various rulings of the court exceptions were taken, as well as to rulings made during the progress of the trial concerning the conduct thereof and to refusals to charge and to the charge as given, and the case comes to this court on exceptions before sentence.   The wife was the only witness for the people.

---

and punished by imprisonment in the State prison for not more than three years nor less than one year; or by imprisonment in the county jail not more than one year and not less than three months: *Provided,* however, if, at any time before sentence he shall enter into bond to the people of the State of Michigan, in such penal sum and with such surety or sureties as the court may fix, conditioned that he will furnish his wife and children with necessary and proper shelter, food, care and clothing, then the court may suspend sentence therein: *Provided,* That upon failure of such person to comply with said undertaking he may be ordered to appear before

The substance of all of the testimony given at the trial is printed in the record. It is at least doubtful whether the testimony is not as consistent with the idea of non-abandonment of the wife as with the one of abandonment. But we cannot say there was no evidence to support the verdict. We do not find that error was committed in receiving or rejecting testimony. The rule that one who is a competent witness and has knowledge of the facts may make complaint in a criminal case permits the wife to be the complaining witness in this case. No good reason has been suggested for holding that, because a superintendent of the poor or a county agent may make the complaint, it was intended to give them the exclusive right to initiate proceedings. This conclusion is supported by *State* v. *Giles*, 101 Me. 349; *State* v. *Woodmansee*, 19 R. I. 651; *State* v. *Newberry*, 43 Mo. 429. See, also, *People* v. *Sebring*, 66 Mich. 705.

The charge of the court did not give to the words " deserts " and " abandons " the meaning which the statute imports, and which the respondent was entitled to have given to them in defining that element of the statute offense which consists in the abandonment of the wife. The marital relation implies, not only provision by the husband for the wife and family, but the living together and cohabitation of the parties thereto. Desertion of one by the other means more than going away, more than separation. It negatives the idea of a friendly separation or a separation for just cause. "Abandonment" is defined as:

the court and show cause why sentence should not be imposed, whereupon the court may pass sentence, or for good cause shown may modify the order and take a new undertaking and further suspend sentence as may be just and proper.

"SEC. 2. When any person is convicted under this act and sentenced to serve a term of imprisonment either in one of the State prisons or in the Detroit house of correction, the warden of the prison or superintendent of said house of correction in which said person shall be confined shall, at the end of each and every week during the period of said term of imprisonment, pay over to any of the

"The act of a husband or wife who leaves his or her consort wilfully and with an intention of causing perpetual separation." 1 Bouvier's Law Dictionary, p. 2.

The same author (Id. p. 561) defines "desertion" as "the act by which a man abandons his wife and children, or either of them." As a cause for divorce, "desertion" means a wilful abandonment by one of the parties of the other without cause and against the wish of the other party. *Warner* v. *Warner*, 54 Mich. 492. See, also, *Place* v. *Place*, 139 Mich. 509, 511; *Johnson* v. *Johnson*, 125 Mich. 671; *Cox* v. *Cox*, 35 Mich. 461; *Rose* v. *Rose*, 50 Mich. 92. It is such an act, namely, a wilful abandonment of the wife or family without just cause, which the statute is designed to prevent and which is made a felony unless provision is made by the husband for his wife or children, as the case may be. That he is unable to make the required provision does not excuse the act. It is the abandonment of wives and of infant children under such conditions that society is properly concerned about. That the abandoned wife may be able to earn a living, or that friends or relatives will keep her from want, does not excuse abandonment. In considering a statute which made disorderly persons of those who, being of sufficient ability, refused or neglected to support their families, it was held upon the words of the statute that liability of the husband did not depend upon the fact that the family had become a public burden. *People* v. *Malsch*, 119 Mich. 112. This view is sustained,

superintendents of the poor of the city or county in which the wife or children of such person resides, the sum of one dollar and fifty cents per week, if there be only a wife, and fifty cents per week additional for each minor child under the age of fifteen years, in lieu of any earnings of such person while an inmate therein, said sums to be expended by said superintendent of the poor for the care and support of the wife or children of said person, as the case may be; and it shall be the duty of the superintendents of the poor of the city or county from which such person shall be committed to furnish the warden of the prison or superintendent of said house of correction in which said person is confined, with a sworn statement, showing the names of the wife and children who are left depend-

also, by the fact that the repealed statute of 1903 (Act No. 39, Pub. Acts 1903) made the resulting public burden an element of the statute offense. The repealing statute does not. Respondent was entitled to have the jury instructed, in accordance with his request, that "abandonment or desertion under the statute, means to separate from, wrongfully, without intention of again resuming marital relations." For the error in the charge and the refusal to charge as requested, the conviction must be set aside.

It is necessary, however, to consider the objections to the validity of the statute, since, if they are sound, no conviction for its violation can be sustained, and it would be idle to order a new trial of the case. The last section repeals a particular act and "all other acts and parts of acts contravening the provisions of this act." It is said that this clause and the notice of it in the title create duplicity; that the act repealed may stand with the repealing act, for which reason the law has more than one object. Comparison will discover that these acts cover substantially the same ground, and are aimed at the same evil. The elements of the offense created by the repealed act are abandonment, nonprovision, a resulting public burden, and the going out of the State by the husband or father. In the repealing statute the last two of these elements are omitted. There is so manifest an inconsistency in the legislation that it will be presumed that it was not

ent upon the city or county for support, their ages and relation they bear to such convicted person.

"SEC. 3. In the hearing of all complaints under this act, the wife may testify against the husband without his consent.

"SEC. 4. Any of the superintendents of the poor of the city or county or the county agent of the state board of corrections and charities for the county wherein the wife or minor children of the person complained of reside, may make the complaint.

"SEC. 5. Act number thirty-nine of the public acts of nineteen hundred three, and all other acts and parts of acts contravening the provisions of this act are hereby repealed." Act No. 144, Pub. Acts 1907.

the intention of the legislature to continue the earlier act in force. The rule announced in *Tolford* v. *Church*, 66 Mich. 431, 439, 440, is applicable. But further than this, we have concluded, for reasons presently to be stated, that the act in question has a single object, and the express repeal of the earlier statute may be regarded as indicative of the object and as making certain the general purpose.

It is said that in the proviso to section 1 and in the provision for securing to the family of a convicted person a portion of his earnings, if he earns money in confinement, are to be found distinct legislative objects. There is an apparent, and we think a necessary, connection between preventing abandonment of families by the husband and father without providing for them and the enforced use of his earnings after his conviction for their support. The provision for judicial clemency is intended to secure such maintenance by voluntary action of the convicted person. The case in this respect is not unlike *Robison* v. *Wayne Circuit Judges*, 151 Mich. 315. Whether the provision for securing the earnings of one confined in the Detroit house of correction will be wholly ineffective we do not know.

A question presented in argument, one not raised in the court below, relates to the effect to be given to the proviso to section one. The point is considered for the reason heretofore given. The pardoning power belongs to the executive. If the effect of the proviso is to distribute any part of the pardoning power to another department of government, the legislation is invalid. If it is invalid, we shall be obliged to determine whether the act without the proviso may be sustained. The power to suspend sentence and the power to grant reprieves and pardons are distinct and different in origin and in nature. It has never been supposed that the power of courts to suspend sentence was other than a judicial function. It has been frequently and constantly exercised by courts of record before and since the adoption of the Constitution.

4 Hawk. P. C. chap. 51, § 8; 1 Bishop on Criminal Procedure (2d Ed.), § 1124; 4 Blackstone's Commentaries, chap. 31; *Commonwealth* v. *Dowdican*, 115 Mass. 136; *Weaver* v. *People*, 33 Mich. 296; *People* v. *Reilly*, 53 Mich. 260; *People, ex rel. Forsyth*, v. *Court of Sessions*, 141 N. Y. 288. Assuming the power to be, as it was at common law asserted to be, a power inherent in courts, no new power is conferred upon courts when the legislature in terms authorizes courts to suspend sentence. The distinction between the pardoning power and the power to suspend sentence is clearly pointed out in the opinion in *People, ex rel. Forsyth*, v. *Court of Sessions*, supra. It is said:

"The suspension of the sentence simply postpones the judgment of the court temporarily or indefinitely, but the conviction and liability following it, and all civil disabilities remain and become operative when judgment is rendered. A pardon reaches both the punishment prescribed for the offense and the guilt of the offender. It releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense."

We do not find in the language employed in the act or in its probable effect if enforced any encroachment upon the exclusive power of the executive to grant pardons.

Is the legislation objectionable as interfering with the power of the court to impose sentence? Reading the proviso, one is impressed that it was intended the suspended sentence should be potential for an indefinite period to secure provision for the family in cases where the respondent was able to furnish the required bond. The provision for taking a new bond when there has been a breach of the one first given implies that the court shall determine whether there has been such a breach, and whether the breach is excused before imposing sentence. We cannot assume that interference with the judicial power was intended, or that the design was to confer any new power. The proviso must be read so as to sustain, and

not destroy, the legislation if such reading is reasonably possible. No condition is imposed upon the exercise of the power of the court to impose sentence in conformity with the statute and a discretion judicially exercised. The exercise of clemency is invited, it is not required. It is as though the legislature had provided for suspension of sentence in the discretion of the court during good behavior. It is said in argument that one found guilty of violating the statute may be subjected for an indefinite period to judicial espionage, and at the end of such period be sentenced. We have already indicated, and this is a complete answer to the objection, that the statute will not be construed as conferring upon the court any new power.

With the meaning we have given it, a meaning gathered from the language employed and the legal effect thereof, the legislation may be sustained. A new trial is granted.

HOOKER, MOORE, McALVAY, and BROOKE, JJ., concurred.