MICHIGAN CIVIL RIGHTS COMMISSION v CLARK

OPINION OF THE COURT

1. CONSTITUTIONAL LAW—CIVIL RIGHTS COMMISSION—DIMINISH-THE-RIGHT CLAUSE—COURTS.

A section of an article of the Michigan Constitution establishing the civil rights commission does not create any new civil rights neither does it create a new judicial remedy; the diminish-the-right clause of that section providing that nothing in that section shall be construed to diminish the right of any party to direct and immediate legal or equitable remedies in the courts of Michigan does not establish an automatic right to remove to a court any proceedings commenced before the Civil Rights Commission but assures persons against whom Civil Rights Commission proceedings are instituted that, despite the constitutional status of the commission, they may have recourse to the courts of this state if the commission proceeds in a manner justifying judicial intervention under the same principles applicable to threatened illegal action by other administrative agencies (Const 1963, art 5, § 29).

2. CONSTITUTIONAL LAW—CONSTRUCTION—CIVIL RIGHTS COMMISSION—POWERS—GOVERNOR—SUPREME COURT—LEGISLATURE—LIMITATIONS ON POWER.

A balanced construction of the section of an article of the Michigan Constitution establishing the civil rights commission requires recognition of limitations on the power of the Legislature to restrict the powers of the commission because the commission, just as the Legislature, Governor and the Michigan Supreme Court, derives its powers directly from the people under the Constitution; the Legislature, although it may legis-

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur 2d, Constitutional Law §§ 382, 533.

[2–4, 9] 16 Am Jur 2d, Constitutional Law § 227 *et seq.*

[5] 42 Am Jur 2d, Injunctions § 247 *et seq.*

[6–8] 16 Am Jur 2d, Constitutional Law § 216 *et seq.*

[10] 16 Am Jur 2d, Constitutional Law § 219 *et seq.*

[11] 16 Am Jur 2d, Constitutional Law §§ 219 *et seq.;* 555.

[12] 16 Am Jur 2d, Constitutional Law § 584.

late with regard to the exercise of executive and judicial functions, may not prevent the executive or judicial branches from exercising their powers, and similarly, the Legislature, although it may legislate with regard to the commission, may not do so in a manner which prevents the commission from functioning effectively (Const 1963 art 5, § 29).

3. CONSTITUTIONAL LAW—CIVIL RIGHTS COMMISSION—POWERS—LEGIS-
LATURE—REGULATIONS—PROCEDURES AND REMEDIES—EQUAL
PROTECTION.

The sense of the section of an article of the Michigan Constitution establishing the Michigan Civil Rights Commission is that the commission shall have the power to "investigate", "secure", and "issue appropriate orders" regarding any civil right guaranteed by law subject to reasonable regulation by the Legislature; while the Constitution contemplates the legislative enactment of reasonable regulations for civil rights commission procedures and remedies, it does not authorize legislation preventing the commission from securing equal protection of a civil right guaranteed by law (Const 1963, art 5, § 29).

4. CIVIL RIGHTS—CIVIL RIGHTS COMMISSION—FAIR HOUSING ACT—RE-
MOVAL OF PROCEEDINGS—REGULATIONS—PROCEDURES AND REM-
EDIES—CONSTITUTIONAL LAW—POWERS—DISCRIMINATION—PRI-
VATE HOUSING.

A section of the Fair Housing Act of 1968 authorizing the removal of Michigan Civil Rights Commission proceedings to the circuit court is not a reasonable regulation of civil rights commission procedures and remedies and it is unconstitutional, because, for all practical purposes, it eliminates the constitutionally-expressed power of the commission to investigate and secure the legislatively-created civil right against discrimination in the rental and sale of private housing by precluding the commission from issuing an appropriate order in any case where the person charged timely exercises the statutory right of removal; if the Michigan Supreme Court were to hold the removal provision constitutional, the commission would have no meaningful function in enforcing that civil right against persons who choose to exercise that right (Const 1963, art 5, § 29; MCLA 564.401a).

5. CIVIL RIGHTS—CIVIL RIGHTS COMMISSION—STATUTES—CIRCUIT
COURTS—INJUNCTION—ELECTION OF REMEDIES—COMPLAINT—
HEARING—ORDERS.

The Michigan Civil Rights Commission's filing of a statutorily allowed petition with a circuit court for an injunction restrain-

ing persons against whom a complaint had been filed with the commission from taking any action to sell or otherwise dispose of their house and doing or procuring any act which would tend to render ineffectual any order of the commission, which did not seek an adjudication on the merits, does not operate as an election of remedies barring the commission from issuing a charge pursuant to a complaint and issuing an appropriate order after a hearing on the charge (MCLA 564.405).

DISSENTING OPINION
T. E. BRENNAN, J.

6. CIVIL RIGHTS—CIVIL RIGHTS COMMISSION—BRANCH OF GOVERNMENT —EXECUTIVE—CONSTITUTIONAL LAW—POWERS.

*The Michigan Civil Rights Commission is not a branch of government; although it derives its power from the constitution, it is still a commission, and properly an arm of the executive branch of government.*

7. CIVIL RIGHTS—CIVIL RIGHTS COMMISSION—JURISDICTION—CONSTITUTIONAL LAW—COURTS—WITNESSES—POWERS—ORDERS.

*The Michigan Civil Rights Commission is a constitutional commission, it is not a court, it has no in personam jurisdiction over citizens, and it may compel the attendance of witnesses only through the aid of a court of competent jurisdiction; its final orders do not rise to the dignity of writs, that is to say, the commission has no power to direct the sheriff or other law enforcement officer to carry out its orders.*

8. CIVIL RIGHTS—CIVIL RIGHTS COMMISSION—ENFORCEMENT OF ORDERS —CIRCUIT COURTS.

*The ultimate enforcement of Michigan Civil Rights Commission orders requires application to a circuit court; in such case, the commission may appear in circuit court as a litigant, urging that the judicial power of the state be used to accomplish the end sought to be achieved by the commission.*

9. CIVIL RIGHTS—CIVIL RIGHTS COMMISSION—CONSTITUTIONAL LAW— ENFORCEMENT OF CIVIL RIGHTS—PROTECTION OF CIVIL RIGHTS— REMOVAL OF ACTION—CIRCUIT COURTS.

*The framers of the constitution clearly intended that the Michigan Civil Rights Commission would act as an advocate for the enforcement and protection of the civil rights of Michigan residents, but, it must be kept in mind that the commission exists for the protection of civil rights; civil rights are those rights which are recognized by law, and cognizable by courts, therefore, when the Legislature provides for removal of a given*

*dispute to circuit court, it does not limit or restrict the commission in any way.*

10. CIVIL RIGHTS—COURTS—POWERS—CIVIL RIGHTS COMMISSION.

   *The power of the courts to adjudicate civil rights does not infringe upon the power and duty of the Michigan Civil Rights Commission to secure such rights or investigate claimed infringements thereon.*

11. CIVIL RIGHTS—CIVIL RIGHTS COMMISSION—PUBLIC AGENCY—INVESTIGATING POWERS—COERCION—COURTS.

   *That the Michigan Civil Rights Commission can accomplish more by investigation than by litigation may be true but, such a state of affairs is not only irregular, it is a denial of civil rights; that any public agency should be empowered or permitted to use its investigatory powers as a form of coercion to achieve results which could not be commanded by a court is unthinkable.*

12. CIVIL RIGHTS—CIVIL RIGHTS COMMISSION—CONSTITUTIONAL LAW—CIRCUIT COURTS—APPEAL AND ERROR—REMOVAL OF ACTION.

   *Any matter considered by the Michigan Civil Rights Commission must, by constitutional mandate, be relitigated in circuit court upon the option of the respondent; therefore, there is no harm whatever in permitting such aggrieved party the right to accelerate his appeal by a legislatively approved process of removal (Const 1963, art 5, § 29).*

Appeal from Court of Appeals, Division 1, V. J. Brennan, P. J., and Quinn and O'Hara, JJ., affirming Wayne, Theodore R. Bohn, J., and Macomb, Alton H. Noe, J. Submitted November 9, 1973. (Nos. 13–14 November Term 1973, Docket Nos. 54, 466–54,468.) Decided December 18, 1973.

42 Mich App 271 reversed.

Complaints before Michigan Civil Rights Commission against Mrs. Ralph G. Clark, and Frank Misko and Bernice Misko for unlawful discrimination. Complaint by Michigan Civil Rights Commission against Frank Misko and Bernice Misko for an injunction. Injunction granted. Respondents in

separate complaints brought under the Fair Housing Act of 1968, petitioned for removal of the proceedings from the Michigan Civil Rights Commission to circuit court. Petitions granted. The Civil Rights Commission appealed to the Court of Appeals. Cases consolidated on appeal. Affirmed. The Civil Rights Commission appeals. Reversed and remanded to the circuit courts with directions.

*Robert J. Lord,* for Frank Misko and Bernice Misko.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Michael A. Lockman,* Assistant Attorney General, for the Civil Rights Commission.

Amicus Curiae: *Fraser, Trebilcock, Davis & Foster,* for Michigan Real Estate Association.

LEVIN, J. The questions presented are whether a person proceeded against before the Civil Rights Commission has a constitutional right to remove the proceedings to a court and whether the provisions of § 401a of the Fair Housing Act of 1968[1]

---

[1] "Sec. 401a. Within 15 days of receiving the notice of hearing as provided in section 406, the respondent may file with the circuit court for the county in which the complaint is alleged to have taken place a petition for the removal of the proceedings to the circuit court. Upon payment of the required filing fee, the court shall immediately issue an order removing the complaint from the jurisdiction of the civil rights commission. The court shall assume jurisdiction of the proceedings and the civil rights commission shall take no further action in regard to the complaint upon receiving a copy of the court order. The circuit court shall have all the powers and duties in regard to the complaint as are provided in this act to the civil rights commission. The civil rights commission may represent the complainant in the proceedings before the circuit court. Upon a determination by the circuit court that the respondent has not been guilty of an unfair housing practice, the court may order all costs of the proceeding incurred by the respondent to be paid by the complainant." MCLA 564.401a; MSA 26.1300(401a).

authorizing the removal of CRC proceedings to the circuit court are constitutional.

Complaints were filed with the CRC alleging that Mrs. Ralph G. Clark discriminated in renting on account of race or color. Another complaint filed with the CRC alleged that Mr. and Mrs. Frank Misko discriminated in refusing to allow complainants to purchase the Misko home.

Clark and the Miskos filed petitions in the circuit courts of the county of their residence seeking the removal of the CRC proceedings to the circuit court pursuant to § 401a of the Fair Housing Act of 1968. That section provides that upon the filing of such a petition and payment of the required filing fee, "the court shall immediately issue an order removing the complaint from the jurisdiction of the civil rights commission. The court shall assume jurisdiction of the proceedings and the civil rights commission shall take no further action in regard to the complaint upon receiving a copy of the court order." The petitions for removal were granted.

I

In upholding the constitutionality of the removal provision (§ 401a), the Court of Appeals considered the so-called diminish-the-right clause of Const 1963, art 5, § 29[2] establishing the CRC.

[2] "It shall be the duty of the commission in a manner which may be prescribed by law to investigate alleged discrimination against any person because of religion, race, color or national origin in the enjoyment of the civil rights guaranteed by law and by this constitution, and to secure the equal protection of such civil rights without such discrimination. * * *

"The commission shall have power, in accordance with the provisions of this constitution and of general laws governing administrative agencies, to promulgate rules and regulations for its own procedures, to hold hearings, administer oaths, through court authorization to require the attendance of witnesses and the submission of records,

The Court said that the debate at the Constitutional Convention "confirms our opinion that the language involved means just what it says, namely: a party to a proceeding before the CRC is entitled to a court determination on the complaint in lieu of a commission determination, if he so desires." *Michigan Civil Rights Commission v Clark,* 42 Mich App 271, 275; 201 NW2d 658 (1972).

The Attorney General contends that the diminish-the-right clause does not create, or permit the Legislature to create, an automatic right to remove a proceeding from the jurisdiction of the CRC.

The Miskos assert that § 401a implements the diminish-the-right clause.

The amicus curiae, Michigan Real Estate Association, proffers an alternative analysis asserting that since the right of the complainants and of the CRC to proceed against Clark and the Miskos is derived from legislation[3] the Legislature can at-

---

to take testimony, and to issue appropriate orders. The commission shall have other powers provided by law to carry out its purposes. Nothing contained in this section shall be construed to diminish the right of any party to direct and immediate legal or equitable remedies in the courts of this state.

"Appeals from final orders of the commission, including cease and desist orders and refusals to issue complaints, shall be tried de novo before the circuit court having jurisdiction provided by law." Const 1963, art 5, § 29.

[3] The amicus refers to Justice ADAMS' opinion in *Beech Grove Investment Co v Civil Rights Commission,* 380 Mich 405, 419, 424, 436; 157 NW2d 213 (1968): "While the commission has the duty to investigate and to secure the equal protection of civil rights, such civil rights are not set forth in article 5, § 29." The ADAMS opinion concluded

—The CRC did not have authority under either Federal law or the Federal Constitution to secure the equal protection of a civil right in private housing.

—Although there is "no State law that deals with civil rights as pertaining to private housing" "there is a civil right to private housing both at common law and under the 1963 Michigan Constitution where, as in this case, that housing has been publicly offered for

tach any conditions it may wish to that right. The Legislature, says the amicus, may oust the CRC altogether from jurisdiction of a legislatively created right.

## II

There were statements by some delegates in the lengthy arguments at the Constitutional Convention which tend to support the view that the diminish-the-right clause was intended to create a constitutional right to remove any CRC proceeding to the courts. We are persuaded, however, that John B. Martin, the chairman of the committee responsible for the CRC proposal, speaking shortly before the final vote, expressed the ultimate under-

---

sale by one who is in the business of selling housing to the public. * * * Beech Grove Investment Company * * * [was] obligated by reason of the public nature of their enterprise to treat all members of the public alike. No opinion is presently expressed upon the question of whether there is a civil right to private housing where that housing has been publicly offered for sale by one who is not in the business of selling housing to the public, or by his representative."

The present case of Clark and the Miskos concerns rental and sale by persons apparently not engaged in the real estate business and, thus, *Beech Grove's* analysis analogizing to businesses offering "public accommodations" would not be apposite.

The amicus also refers to *Pompey v General Motors Corp,* 385 Mich 537, 551; 189 NW2d 243 (1971), where this Court ruled that a person could maintain an action in the circuit court for damages for racial discrimination under this state's fair employment practices act (MCLA 423.301 *et seq.;* MSA 17.458[1] *et seq.)* and that the provision of the act providing for a circuit court action did not violate the constitutional provision creating the CRC:

"[W]e reject defendant's arguments that the Civil Rights Commission's jurisdiction in this area is exclusive, and conclude that plaintiff may avail himself of a cumulative judicial remedy in vindication of this specific civil right."

This Court's holding in *Pompey* that the Legislature may properly create an alternative judicial remedy and that an aggrieved person may assert his personal grievance either in the courts or by complaint to the CRC does not reach the instant question of whether a person against whom a complaint is lodged may, by seeking a judicial remedy, oust the CRC from consideration of a complaint made against him.

standing of the meaning of the diminish-the-right clause:

"Mr. President, it seems to me that it should be clear that this does not permit a defendant to take his cause elsewhere unless his rights are in some way being violated. He doesn't get out of dealing with the commission simply because he starts an action in a court. If he takes the action to a court, it is because his due process is being violated in some way, and if that is true, then he has a case. If it isn't, he has no case and he can be in court but he is also still involved with the commission and the commission can proceed just as it otherwise would, * * * ."

Just as § 29 of article 5 does not create any new civil rights (see fn 3) neither does it create a new judicial remedy. The diminish-the-right clause assures persons against whom CRC proceedings are instituted that, despite the constitutional status of the CRC, they may have recourse to the courts of this state if the CRC proceeds in a manner justifying judicial intervention or, as the amicus states it, "under appropriate circumstances". "[A]n individual against whom the Commission has proceeded may seek injunctive relief from threatened harm under the same principles applicable to threatened illegal action by other administrative agencies",[4] including further developments (after the adoption of the 1963 Constitution) of general application of such principles.

### III

Section 29 obliges the CRC to "investigate" alleged discrimination and to "secure" the equal protection of civil rights and grants the CRC the

---

[4] Cramton, *The Powers of the Michigan Civil Rights Commission,* 63 Mich L Rev 5, 21, 23 (1964).

power to "issue appropriate orders" and provides that an appeal from such an order "shall be tried de novo before the circuit court".

CRC's duty to investigate alleged discrimination and to secure the equal protection of civil rights is qualified by the words "in a manner which may be prescribed by law". The power to issue appropriate orders is subject to the qualification "in accordance with the provisions of this constitution and of general laws governing administrative agencies".

A balanced construction of § 29 requires recognition of limitations on the power of the Legislature to restrict the powers of the CRC. The CRC, just as the Legislature, Governor and this Court, derives its powers directly from the people under the Constitution.

The Legislature, although it may legislate with regard to the exercise of executive and judicial functions, may not prevent the executive or judicial branches from exercising their powers.[5] Similarly, the Legislature, although it may legislate with regard to the CRC, may not do so in a manner which prevents the CRC from functioning effectively.

The sense of the Constitution is that the CRC shall have the power to "investigate", "secure", and "issue appropriate orders" regarding any civil right guaranteed by law subject to reasonable regulation by the Legislature.

While the Constitution contemplates the legislative enactment of reasonable regulations for CRC procedures and remedies,[6] it does not authorize

[5] *See People v Stickle,* 156 Mich 557, 563–564; 121 NW 497 (1909); *Wylie v City Commission,* 293 Mich 571, 582–583; 292 NW 668 (1940); *Gray v Clerk of Common Pleas Court,* 366 Mich 588, 595; 115 NW2d 411 (1962).

[6] The Legislature has provided remedies in § 411 of the act (MCLA 564.411; MSA 26.1300[411]) for an unfair housing practice. An "appro-

legislation preventing the CRC from securing equal protection of a civil right guaranteed by law.

The removal provision, for all practical purposes, eliminates the constitutionally-expressed power of the CRC to investigate and secure the legislatively-created civil right against discrimination in the rental and sale of private housing by precluding the CRC from issuing an appropriate order in any case where the person charged timely exercises the statutory right of removal. If we were to hold the removal provision constitutional, the CRC would have no meaningful function in enforcing that civil right against persons who choose to exercise that right.

It is not necessary to decide whether there is a civil right against discrimination in private rental and sale of housing apart from the provisions of the Fair Housing Act of 1968. Even if this civil right is legislatively derived, once it becomes a "civil right guaranteed by law" the CRC has the power and the duty to investigate allegations of unconstitutional discrimination in the enjoyment of that right, to secure equal protection of that right, and to issue appropriate orders to enforce that right.

---

priate order" under § 411 for an unfair housing practice "may include and shall be limited to":

(a) petitioning the circuit court "for an order providing for the sale, exchange, lease, rental, assignment or sublease of real property to an individual";

(b) "[r]eporting as to the manner of compliance";

(c) imposing reasonable record keeping requirements;

(d) petitioning the circuit court for an order awarding economic damages not exceeding $500.

It is obvious that the remedies available to the CRC have been carefully circumscribed. It must turn to the circuit court for the enforcement of its orders.

The Constitution provides that appeals from all final orders of the CRC "shall be tried de novo before the circuit court".

There are ample safeguards against any abuse of power by the CRC.

We conclude that § 401a is not a reasonable regulation of CRC procedures and remedies and it is unconstitutional.

IV

On the day following the filing with the CRC of the complaint against the Miskos, the CRC sought and obtained a circuit court injunction restraining the Miskos from taking any action to sell or otherwise dispose of their house and doing or procuring any act which would tend to render ineffectual any order of the CRC. Section 405 of the Fair Housing Act of 1968 provides for the filing of such a petition to preserve the status quo pending CRC consideration of a complaint and charge.[7] The filing of such a petition, which does not seek an adjudication on the merits, does not operate as an election of remedies barring the CRC from issuing a charge pursuant to a complaint and issuing an appropriate order after a hearing on the charge.

Reversed and remanded to the circuit courts

_____

[7] "Sec. 405, At any time after a complaint is filed, the commission may file a petition in the circuit court in a county in which the unfair housing practice allegedly occurred, or in a county in which a respondent resides or transacts business, seeking appropriate temporary relief for a period of time not to exceed 30 days against the respondent pending final determination of proceedings under this chapter, including an order or judgment restraining him from doing or procuring any act tending to render ineffectual any order the commission may enter with respect to the complaint. The court may grant such temporary relief or restraining order as it deems just and proper. On motion of the respondent, the complainant or on its own motion the court may hear the case on its merits for immediate disposition. Upon filing the petition the commission shall forthwith file for record a notice of pendency of the action seeking temporary relief. The notice shall be filed with the register of deeds in the manner defined in section 2701 of Act No. 236 of the Public Acts of 1961, being section 600.2701 of the Compiled Laws of 1948." MCLA 564.405; MSA 26.1300(405).

with directions that they dismiss the petitions removing the CRC proceedings to those courts.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH, SWAINSON, WILLIAMS, and M. S. COLEMAN, JJ., concurred with LEVIN, J.

T. E. BRENNAN, J. *(dissenting).* I do not accept my Brother's analysis of the constitutional role of the Civil Rights Commission.

The commission is not a branch of government. Although it derives its power from the Constitution, it is still a commission, and properly an arm of the executive branch of government.

It is a constitutional commission, not unlike the State Highway Commission (art 5, § 28) or the State Civil Service Commission (art 11, § 5).

The Civil Rights Commission is not a court. It has no in personam jurisdiction over citizens. It may compel the attendance of witnesses only through the aid of a court of competent jurisdiction. Its final orders do not rise to the dignity of writs; that is to say, the commission has no power to direct the sheriff or other law enforcement officer to carry out its orders.

Ultimate enforcement of commission orders requires application to a circuit court. In such case, the commission may appear in circuit court as a litigant, urging that the judicial power of the state be used to accomplish the end sought to be achieved by the commission.

The framers of the Constitution clearly intended that the Civil Rights Commission would act as an advocate for the enforcement and protection of the civil rights of Michigan residents.

But, it must be kept in mind that the Civil Rights Commission exists for the protection of civil

rights. Civil rights are those rights which are recognized by law, and cognizable by courts.

Therefore, when the Legislature provides for removal of a given dispute to circuit court, it does not limit or restrict the Civil Rights Commission in any way.

The power of the circuit court to adjudge the guilt or innocence of an accused does not conflict with or infringe upon the power of the prosecuting attorney to investigate crimes or prosecute criminals.

Similarly, the power of the courts to adjudicate civil rights does not infringe upon the power and duty of the Civil Rights Commission to secure such rights or investigate claimed infringements thereon.

It may be true that the Civil Rights Commission can accomplish more by investigation than by litigation, just as it may be that a prosecuting attorney can accomplish more by the threat of prosecution than by the prosecution itself.

But, such a state of affairs is not only irregular, it is a denial of civil rights.

A man may indeed do more than the law requires as a means of avoiding the expense and inconvenience of litigation, but it is unthinkable that any public agency should be empowered or permitted to use its investigatory powers as a form of coercion to achieve results which could not be commanded by a court.

The final paragraph of Const 1963, art 5, § 29, says:

"Appeals from final orders of the commission, including cease and desist orders and refusals to issue complaints, shall be tried de novo before the circuit court having jurisdiction provided by law."

Since, by constitutional mandate, any matter considered by the commission must be relitigated in circuit court upon the option of the respondent, I see no harm whatever in permitting such aggrieved party the right to accelerate his appeal by a legislatively approved process of removal.

I would affirm.